**DEBEVOISE & PLIMPTON LLP**
Jonathan R. Tuttle
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
(202) 383-8124
jrtuttle@debevoise.com

**DEBEVOISE & PLIMPTON LLP**
David H. Bernstein (*pro hac vice* forthcoming)
Clara Correa (*pro hac vice* forthcoming)
66 Hudson Boulevard East
New York, New York 10001
(212) 909-6696
dhbernstein@debevoise.com
ccorrea@debevoise.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ANCESTRY.COM OPERATIONS INC.,  <br><br>Plaintiff,<br><br>-against-<br><br>MYANCESTRYAI.COM,<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT** |

Plaintiff Ancestry.com Operations Inc. ("Ancestry"), by its attorneys Debevoise & Plimpton LLP, for its Complaint against Defendant <myancestryai.com>, alleges as follows:

**Preliminary Statement**

1.	Ancestry files this *in rem* action pursuant to the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d), against the domain name, <myancestryai.com>.

2.	Ancestry is the largest for-profit consumer family history, genealogy, genetic genealogy, and consumer genomics company in the world.  Among the goods and services that Ancestry provides are family tree building tools, access to over 60 billion searchable historical records and photographs, detailed genealogy reports, and AI-powered tools designed to provide additional historical information and context.

3.	For over 40 years, Ancestry has provided its services using a host of registered, distinctive, and recognizable trademarks ("Ancestry Family of Marks"), including ANCESTRY® (Reg. No. 1,577,711), ANCESTRY.COM® (Reg. No. 3,852,700), and ANCESTRYDNA® (Reg. No. 4,280,444).  Each of those registrations (and many of the other registrations in the Ancestry Family of Marks) is incontestable under 15 U.S.C. § 1065.  Ancestry also owns federally registered trademarks for its leaf logos, which it uses to promote its products and offerings.  These include, but are not limited to, Reg. No. 4,041,172 (green three leaf design), which is incontestable, and Reg. No. 6,840,321 (single leaf design) (together, the Ancestry green branding and the Ancestry leaf logos are referred to herein as the "Ancestry Trade Dress").

4.	The registrant of the <myancestryai.com> domain name has concealed the name, organization, address, phone number and email address of the actual owner of this domain name from public view by using a privacy service (identified as "Withheld for Privacy ehf"), with an address in Iceland.

5. The owner of the <myancestryai.com> domain name is using that domain name to resolve to a website that infringes the Ancestry Family of Marks. It offers genealogical services, including a genealogical history report claimed to be generated through the use of AI tools, that overlap and directly compete with the services Ancestry offers. Offering genealogical services under the ANCESTRY name (including with references to "Ancestry," "Ancestry Test," "Ancestry Report," "Ancestry Results" and "Ancestry Story") will inevitably deceive consumers into believing that these services come from, or are generated with the help of, Ancestry, and are drawn from Ancestry's proprietary database of 60+ billion historical records. Adding to the likelihood of deception is that the offerings found on the www.myancestryai.com website feature a green color scheme and leaf logo that is confusingly similar to the Ancestry Trade Dress.

6. The registration of the <myancestryai.com> domain name, and the use of that domain name to market genealogical history reports and information, reflects a bad faith intent to profit off of the goodwill and reputation that Ancestry has established as a major provider of genealogical tools and services. This bad faith registration and misuse of <myancestryai.com> is causing irreparable harm to Ancestry, to the goodwill in the Ancestry Family of Marks, and to Ancestry's reputation for excellence, none of which can be compensated monetarily. Accordingly, Ancestry is entitled to the immediate transfer of the domain name.

## The Parties

7. Plaintiff Ancestry is a privately-held company registered and organized under the laws of the state of Virginia, with a principal place of business at 1300 W

Traverse Parkway, Lehi, UT 84043. Ancestry is the world's largest for-profit genealogy company, operating a network of genealogical historical records and related genetic genealogy websites.

8. The <myancestryai.com> domain name is registered with Namecheap Inc. ("Namecheap"). The registrant's contact information is obscured from the WHOIS Record through a privacy shield, which indicates that the registrant is based in Reykjavik, Iceland. As such, Ancestry is unable to conclusively determine the identity of the registrant from the WHOIS Record. The WHOIS Records showing the redacted registration information for <myancestryai.com> is attached as Exhibit A.

## Jurisdiction and Venue

9. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1121(a), 1125(d), and 28 U.S.C. §§ 1331.

10. 15 U.S.C. § 1125(d)(2)(A) provides for an *in rem* action against a domain name (the *res*) if the owner of the trademark is unable to obtain personal jurisdiction over a person who would have been a defendant under § 1125(d)(1), or if the owner of the trademark, through due diligence, was unable to find the individual(s) behind the domain name's registration. Ancestry has sent notice of the alleged violation to the postal address provided by the registrant to the registrar and the contact email address listed on the domain name website, but the owner of the domain name has not responded and has not identified itself. *See* Exhibit B. Because the registrant is using a privacy service to mask its identity, Ancestry has been unable to identify the registrant, and Ancestry's efforts to uncover the identity of the registrant have been inconclusive. Furthermore, the

registrant appears to be located in Iceland, in which case Ancestry might face difficulties in establish *in personam* jurisdiction over the registrant. Accordingly, Ancestry is entitled by statute to bring this *in rem* action.

11. The Court has jurisdiction over the *res*, the <myancestryai.com> domain name, pursuant to 15 U.S.C. § 1125(d)(2)(C)(i). Verisign Global Registry Services ("Verisign GRS"), the exclusive registry for all TLD ".com" domain names, including <myancestryai.com>, has its principal place of business in this judicial district. *See Cable News Network, LP, LLLP v. CNNews.com*, 56 F. App'x 599, 602 (4th Cir. 2003) (affirming the district court's ruling that, because the registry, VeriSign GRS, is in the Eastern District of Virginia, the court had jurisdiction over the domain name under the ACPA). Verisign GRS maintains the shared reservation system for ".com" domain names that allows all registrars, including Namecheap, to enter new domain names into the master directory and to submit modifications, transfers, re-registrations and deletions of existing ".com" domain names.

12. Venue is proper in this district under 15 U.S.C. § 1125(d)(2) because Verisign GRS, the registry of the <myancestryai.com> domain name, is located in this judicial district.

## The ANCESTRY® Trademark

13. Ancestry is the largest for-profit consumer family history, genealogy, genetic genealogy, and consumer genomics company in the world. Founded in 1983, Ancestry harnesses the information found in family trees, historical records, and DNA to help people gain a new level of understanding about their lives. Ancestry hosts records

from over 80 countries worldwide and, in some cases, records dating back to the 13th century. Ancestry users have created over 100 million family trees containing more than 11 billion familial profiles and have uploaded and attached over 330 million photographs, scanned documents, and written stories to their family trees.

14. Ancestry's use of the Ancestry Family of Marks dates to its founding in 1983. In the last several decades, as Ancestry continued to expand its customer base and database of genealogical information and by virtue of its continuous and exclusive use, the Ancestry Family of Marks and the Ancestry Trade Dress have gained widespread recognition, and customers rely on these marks to identify Ancestry's services and offerings.

15. Today, Ancestry offers a wide range of products and services bearing the Ancestry Family of Marks, which includes, but is not limited to, ANCESTRY®, ANCESTRY.COM®, ANCESTRYDNA®, ANCESTRYACADEMY®, ANCESTRYCLASSROOM®, ANCESTRYLIBRARY®, ANCESTRYK12®, and ANCESTRYPROGENEALOGISTS®. The ANCESTRY® (Reg. No. 1,577,711), ANCESTRY.COM® (Reg. No. 3,852,700), and ANCESTRYDNA® (Reg. No. 4,280,444) trademarks are incontestable under 15 U.S.C. § 1065. Many of these trademarks are also registered internationally. A list of Ancestry's relevant pending and registered trademarks is attached as Exhibit C.

16. In creating the Ancestry Family of Marks, Ancestry chose to select trademarks that begin with and expand upon the ANCESTRY® trademark, based on the considerable fame and recognition of the ANCESTRY® mark established over decades

of use. The Ancestry Family of Marks identifies the products and services that originate with Ancestry.

17. In addition to the Ancestry Family of Marks, as noted above, Ancestry also owns the Ancestry Trade Dress. That distinctive trade dress includes, but is not limited to, federally registered trademarks for Ancestry's leaf logos, including Reg. No. 4,041,172 (shown below at top left), which is incontestable and covers a green three leaf design; Reg. No. 4,717,504 (shown below at top center), which also is incontestable and includes the green three leaf design along with the trademark ANCESTRY; Reg. No. 4,971,576 (shown below at top right), which also is incontestable and covers another green leaf design, Reg. No. 3,626,877 (shown below at bottom left), which also is incontestable and covers a single leaf design regardless of color; Reg. No. 6,840,321 (shown below at bottom center), which covers a different single leaf regardless of color, and Reg. No. 6,988,334 (shown below at bottom right), which covers the three leaf design along with the trademark ANCESTRY regardless of color.

| Reg. No. 4,041,172 | Reg. No. 4,717,504 | Reg. No. 4,971,576 |
|---|---|---|
| Reg. No. 3,626,877 | Reg. No. 6,840,321 | Reg. No. 6,988,334 |

18.     Ancestry owns the <www.ancestry.com> domain name, which was registered in 1995, and which Ancestry uses to advertise and promote its services. Images of the homepage and "Genealogy" page of <www.ancestry.com>, Ancestry's primary domain name and website, are attached as Exhibit D; excerpts are shown below:





19. Ancestry invests more than $100 million per year in global marketing to extend the Ancestry Family of Marks' and the Ancestry Trade Dress' reputation and recognition. Ancestry also invests substantial resources each year in research and development.

20. As a result of Ancestry's substantial investment in and the quality of its products and services, the Ancestry Family of Marks and the Ancestry Trade Dress have become well-recognized, earning substantial consumer good will and a strong reputation. For example, Forbes Magazine has described the ANCESTRY® brand as a household name. *See* Forbes, *TV Advertising Drives Revenue Growth for 'Direct Disruptor' Companies, Research Finds*, at https://www.forbes.com/sites/tonysilber/2018/06/07/tv-advertising-drives-revenue-growth-for-direct-disruptor-companies-research-finds/#20decbe27eef (June 7, 2018). Ancestry's websites receive more than 600 million visits per year.

21. For over 40 years, Ancestry has pioneered the use of cutting-edge technologies, including the use of Artificial Intelligence (AI), to automate genealogical research, digitize historical records, and provide a richer tapestry of family history data to its customers. In 2022, Ancestry announced the creation of a searchable index of the 1950 U.S. Census using new and proprietary AI handwriting recognition technology, allowing a process that previously would have taken years to be completed to be done in just weeks. See *Ancestry® to Apply Handwriting Recognition Artificial Intelligence to Create a Searchable Index of the 1950 U.S. Census*,

https://careers.ancestry.com/blogs/ancestry-corporate/ancestry-to-apply-handwriting-recognition-artificial-intelligence-to-create-a-searchable-index-of-the-1950-u-s-census.

### The Unauthorized Registration and Use of <myancestryai.com>

22. Upon information and belief, the <myancestryai.com> domain name was registered in an effort to profit off of Ancestry's goodwill and mislead consumers who believe they are purchasing legitimate Ancestry services or genealogical reports based on Ancestry's proprietary database of 60+ billion historical records.

23. Without authorization from Ancestry, the registrant registered the <myancestryai.com> domain name on or about January 12, 2025. As noted above, the registrant has concealed its identity through the use of a privacy service, *see* Exhibit A, and has refused to respond to Ancestry's attempts to reach it through correspondence. *See* Exhibit B. The website to which the domain name resolves is being used to market and promote tools and services that allow an individual to explore genealogical history through the use of AI tools. As such, the website to which the defendant domain name resolves is being used to directly compete with the services Ancestry offers.

24. In addition to expropriating Ancestry's distinctive Ancestry Family of Marks, the offerings found on the www.myancestryai.com website feature a trade dress that is confusingly similar to the Ancestry Trade Dress, including a green color scheme and leaf logo. Further adding to the confusion, the website to which the domain name resolves claims that the platform is "built on thousands of verified DNA test results" – which is another service that Ancestry provides (though Ancestry has **tens of millions** of

verified DNA test results in its database). The www.myancestryai.com website, showing the services offered through the website, is attached as Exhibit E, and excerpts are shown below:





25. The www.myancestryai.com website's repeated use of the ANCESTRY® trademark, combined with the use of leaf imagery and a green color scheme, expropriates every element that makes Ancestry's trademarks and branding distinctive to customers. The use of Ancestry's trademarks and trade dress is likely to mislead customers who visit the www.myancestryai.com website into believing they are viewing services and products associated with Ancestry.

| Infringing Domain Name | Ancestry's Registered Trademark |
|---|---|
|  | |

26. The use of the <myancestryai.com> domain name – which incorporates the entirety of the registered, incontestable, and distinctive ANCESTRY® trademark – to

market genealogical history tests and information, especially when that domain name resolves to a confusingly similar website that copies Ancestry's federally registered Ancestry Trade Dress, establishes that the registrant is seeking to capitalize on the goodwill and recognition of Ancestry's marks by advertising and offering highly related services using a confusingly similar domain name and branding. This use of the ANCESTRY® mark constitutes bad faith because: the registrant lacks any trademark rights in the domain name; the registrant is not making a bona fide offering of services because its offering infringes Ancestry's marks; the registrant is not making a bona fide noncommercial or fair use of the mark; the registrant's infringement of the Ancestry Family of Marks is being done with the intent to divert consumers from Ancestry's website to registrant's website by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the registrant's website; the registrant has failed to provide accurate contact information in its WHOIS records; and Ancestry's Family of Marks is distinctive and famous.

27. Ancestry has already seen evidence that confusion will be likely when consumers search for My Ancestry AI. For example, a search for "My Ancestry AI" on the Google search engine yields search results mixing references to Ancestry's website along with references to the defendant's website and social media, including links to Ancestry's own AI tools. Excerpts from a Google search of "My Ancestry AI" at the time shortly before this filing are shown below; the top results are attached as Exhibit F.









28.     The registration and infringing use by the registrant of the <myancestryai.com> domain name constitutes cyberpiracy in violation of the ACPA, as well as trademark infringement under the Lanham Act.  The registrant is attempting to capitalize on the valuable goodwill of Ancestry for its own commercial gain and is infringing the distinctive ANCESTRY® mark in the process.  Accordingly, Ancestry is entitled to the immediate transfer of the domain name.

## COUNT 1

### Cybersquatting under 15 U.S.C. § 1125(d)

29. Ancestry repeats and realleges the allegations of paragraphs 1 through 28 above as if fully set forth herein.

30. The <myancestryai.com> domain name incorporates the entirety of the ANCESTRY® trademark, which was both famous and distinctive at the time the domain name was registered. The <myancestryai.com> domain name is therefore confusingly similar to the ANCESTRY® trademark.

31. The registration and use of the <myancestryai.com> domain name is likely to cause consumers to mistakenly believe that the domain name is sponsored or approved by Ancestry, or that the domain name is otherwise affiliated with or has obtained permission from Ancestry, or that the reports provided through the defendant's website are based on the data in Ancestry's proprietary database of historical records.

32. The use of <myancestryai.com> to market services that compete with those offered by Ancestry evidences the registrant's bad faith intent to divert consumers from Ancestry-affiliated websites for commercial gain and to cause confusion in the market. Additionally, the use of a green color scheme and leaf logo on the defendant's website further evidences bad faith intent to cause confusion among consumers and to mislead them into believing they are purchasing Plaintiff's tools and/or services or that the defendant website is affiliated with or sponsored by Ancestry.

33. By engaging in the activities described above, the registrant of <myancestryai.com> has engaged in cyberpiracy in violation of 15 U.S.C. § 1125(d).

34. The acts of cyberpiracy in connection with the <myancestryai.com> domain name have caused and are continuing to cause irreparable injury to the goodwill and reputation of Ancestry and, unless restrained, will cause further irreparable injury. 15 U.S.C. § 1125(d)(2)(A).

35. By reason of the foregoing, Ancestry is entitled to the transfer of the <myancestryai.com> domain name and such other and further relief this Court deems just and proper.  *See* 15 U.S.C. § 1125(d)(2)(D)(i) & (d)(3).

*(Remainder of page intentionally left blank)*

**Prayer for Relief**

WHEREFORE, Ancestry respectfully requests that the Court order that the <myancestryai.com> domain name be transferred to Ancestry, and award Ancestry such other and further relief as the Court deems just and proper.

DATED:    Washington, D.C.
          June 24, 2025

                              DEBEVOISE & PLIMPTON LLP

/s/: _____
Jonathan R. Tuttle (VA Bar 34465)
801 Pennsylvania Avenue, N.W., Suite 500
Washington D.C. 20004
(202) 383-8124
(202) 383-8118 (fax)
jrtuttle@debevoise.com

David H. Bernstein (*pro hac vice* forthcoming)
Clara Correa (*pro hac vice* forthcoming)
66 Hudson Boulevard East
New York, New York 10001

*Attorneys for Plaintiff Ancestry.com Operations Inc.*